UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                          :
SHAWN M. THOMAS,                          :          CASE NO. 1:17-cv-794
                                          :
            Plaintiff,                    :
                                          :
v.                                        :          OPINION & ORDER
                                          :          [Resolving Doc. Nos. 9, 10, 20, 34, 35]
KAREN SLUSHER, et al.,                    :
                                          :
            Defendants.                   :
                                          :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

　　　Plaintiff Shawn M. Thomas alleges that a number of state prison employees, as well as

Aramark Correctional Services, LLC, violated his constitutional rights, the Fair Labor Standards

Act ("FLSA"), and Ohio law.[1]  The State Defendants[2] move to dismiss Thomas's complaints for

failure to state a claim.[3]  They also allege that Thomas did not administratively exhaust his

claims and that the statute of limitations stops his claims.[4]

　　　Thomas has also filed a number of motions attempting to strike the State Defendants'

motion to dismiss and to extend his deadline for replying to this motion.[5]

　　　For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the

State Defendants' motion to dismiss.  The Court **DENIES** Thomas's other outstanding motions

related to this motion to dismiss.

---

[1] *See generally* Docs. 1, 8.
[2] The State Defendants include Karen Slusher, Peter Burgos, Chris Adams, Robert Eslick, Kelly Rose,
Leann Walker-Williams, Robert Yockey, Timothy Milligan, Dennis Ginley, and John/Jane Does 1-4.
[3] Doc. 20.  Thomas opposes.  Doc. 36.  The State Defendants reply.  Doc. 37.
[4] *See* Doc. 20 at 6.
[5] Doc. 9; Doc. 34.

# I. Background

Ohio imprisons Plaintiff Shawn Thomas at the Richland Correctional Institution ("Richland"). In his wide-ranging complaint, Plaintiff Thomas alleges that some Richland officers and Aramark Correctional Services, LLC ("Aramark") violated numerous state and federal laws as well as his constitutional rights. Thomas gives only a limited description of individual allegedly unconstitutional acts. Instead, Thomas makes summary conspiracy allegations with little, if any, specific supporting factual conspiracy allegations.[6]

Thomas alleges that the State Defendants collectively viewed him as a "filer" or "high filer," and alleges that the State Defendants collectively sought to punish him because Thomas had filed so many earlier lawsuits and grievances.[7] Thomas alleges the State Defendants refer to him as a "filer," "high filer," or "troublemaker," in reference to his numerous litigation activities. Thomas makes almost no specific factual allegation sufficient to show a conspiracy.[8]

## A. Count One[9]

---

[6] For example, Thomas gives a generalized conspiracy allegation without any specific allegation of a meeting, agreement or plan:

> "16. A plan to retaliate against the Plaintiff, and to harass him to not file administrative complaints or lawsuits, effectuated on or around January 28, 2015, to continue thereafter at times pertinent to this Complaint as a continuing course of conduct was the result of their separate and individual actions and of an agreement between Defendants Adams and Burgos and Slusher and between Milligan and each one of them separately with each other member separately (the "conspirators"). Each conspirator shared in the general conspiratorial objective to deprive the Plaintiff of his right to file ODRC administrative· complaints and to access the courts by using the RiCI law library. Each conspirator conferred with each other and/or with other RiCI corrections officers, before confronting the Plaintiff,"

*See* Doc. 1 at ¶ 16.

[7] *See id.* at ¶ 4.A.

[8] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007):

> "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out . . . they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."

[9] Thomas does not chronologically recount the events in his complaint. Instead, he separates each relevant event into counts. This factual background section will mirror his organization scheme.

Thomas alleges that on or around January 28, 2015, when he attempted to inform Defendants Burgos and Adams about his right to access the courts, they falsely accused Thomas of "doubling up" on food in the chow hall, which resulted in Thomas receiving four hours of unpaid labor as punishment.[10]  Thomas also alleges that Defendant Slusher refused him sufficient access to the law library under the pretense that his shirt was not tucked in.[11]

## B. Count Two

On December 16, 2014, Thomas alleges that unidentified Defendants "John/Jane Doe 1-3" and Defendant John Doe 4, who Thomas identifies only as "Ace," searched his cell and wrongfully confiscated "2 large bags of coffee, 6 Christmas greeting cards . . . a box of candy (nutty bars, and his only bag of shaving razors, an expensive T-shirt" and some television cables.[12]  Without saying Defendant Eslick was present, Thomas conclusorily alleges that Defendant Eslick was the Doe Defendants' supervisor and that Defendant Eslick failed to stop the coffee taking.[13]  When Thomas sought to get his property back, Defendants Eslick and Rose allegedly refused to return it.[14]

## C. Count Three

After alleging that Defendant Rose referred to Thomas as a "high filer," Defendant Rose allegedly ordered Thomas's typewriter confiscated on October 27, 2015.[15]  Because of an alleged wrist injury, Thomas alleges that the loss of his typewriter made it difficult to work on several administrative complaints and lawsuits.[16]

---

[10] Doc. 1 at ¶ 16.
[11] *Id.*
[12] *Id.* at ¶ 19.
[13] *Id.*
[14] *Id.* at ¶ 20.
[15] *Id.* at ¶ 31.
[16] *Id.*

## D. Count Four

On or around October 15, 2015, Defendant Rose called Thomas a "malicious filer."[17] Since that date, Thomas alleges that Defendant Rose has refused to provide Thomas with the appropriate administrative grievance forms.[18]

## E. Count Five

With Count Five, Plaintiff Thomas says he has some physical condition and a "lower-range, lower-bunk" placement better accommodates his physical condition. He says that he cannot be placed in most of the five "lower-range, lower-bunk" locations because he serves a life sentence and is not a reintegration inmate; he does not have a very serious medical condition; and he was not on punitive lock-down. Because Thomas wanted this type of housing, only two units were possible: a faith-centered location and a limited movement location.

On or around August 27, 2015, Defendant Walker-Williams transferred Thomas from a faith-based unit within the prison to a Limited Movement Unit ("LMU").[19] Thomas alleges that Walker-Williams made this transfer in spite of the fact that Thomas complied with all of the faith-based unit's requirements.[20]

According to Thomas, the LMU houses especially dangerous or uncompliant prisoners who regularly engage in drug use, gang activities, and who threaten or attack prisoners unaffiliated with a gang.[21] Thomas states that since his transfer to the LMU, he has been beaten and has relapsed into tobacco use.[22]

---

[17] *Id.* at ¶ 40.
[18] *Id.* at ¶¶ 40-41.
[19] *Id.* at ¶ 53.
[20] *Id.* at ¶ 53(a)(a).
[21] *See id.* at ¶¶ 49-51.
[22] *See id.*

Thomas alleges that Walker-Williams knew about these conditions when she transferred him.[23]  He also states that Walker-Williams said that she did not "care about any of your programs or religious programs," and that he should "see how much trouble [he could] cause there."[24]

## F. Count Six

Thomas alleges that between April 2015 and July 2016 Defendant Slusher would routinely close the law library 15 minutes early.[25]  Thomas claims she would use profanity and aggressively remove the "filers" from the library first.[26]  Thomas informed Defendants Milligan, Adams, and Burgos about Slusher's actions, but they did nothing to stop her.[27]

After inmate complaints, Defendant Rose ordered Slusher to keep the library open longer and to cease using profanity, but she did neither.[28]

## G. Count Seven

Thomas alleges that Defendants Yockey and Aramark have created an unsanitary eating environment that serves insufficiently nutritious food.  Specifically, Thomas states that Aramark's food does not provide a minimum necessary amounts of vitamins.[29]  He also alleges that there are birds in the chow hall, and that their feathers and feces fall from the ceiling.[30]  As a result, Thomas states that he has suffered from a number of medical maladies.[31]

---

[23] *Id.* at ¶ 52.
[24] *Id.* at ¶ 53(b).
[25] *Id.* at ¶ 59-60.
[26] *Id.*  Thomas also seems to allege that in addition to the early closures, Slusher would close the library at random times when it was scheduled to be open. *See id.* at ¶ 64.
[27] *Id.* at ¶ 61(a).
[28] *Id.* at ¶ 66(a).
[29] *Id.* at ¶ 77(a).
[30] *Id.* at ¶ 69.
[31] *Id.* at ¶ 77(a).

Thomas recounts one event that occurred on October 7, 2014 involving Defendant Yockey. Thomas attempted to leave the chow hall for the infirmary, but Yockey refused to let him go.[32] This refusal allegedly aggravated Thomas's pre-existing disabilities[33] and caused Thomas to skip meals in the chow hall because he feared further harassment from Defendant Yockey.[34]

Thomas also alleges that he has been forced into involuntary servitude for Defendant Aramark. He states that Aramark hires, fires, and disciplines its prison employees and generally exercises significant control over their work.[35] Thomas argues that he is an employee of Aramark, and is covered by the Fair Labor Standards Act, which entitles him to the minimum wage.[36]

## H. Count Eight

On approximately February 5, 2015, Defendant Ginley allegedly took a federal courts packet that Thomas received and destroyed carbons used to make service of federal court papers.[37] Ginley allegedly stated that, "[Y]ou ain't filing s*** with the courts or using these forms for tattooing, we're destroying them and that's all that's to it. If you don't like it, file a complaint!"[38]

## I. Counts Nine and Ten

In Count Nine, Thomas makes only general allegations that "Defendants" engaged in a campaign of harassment. In Count Ten, Thomas says Ohio's adoption of administrative

---

[32] *Id.* at ¶¶ 75-77.
[33] *Id.* at ¶ 77 (noting that Thomas has suffered from a gunshot wound, hernia, severe damage to his right foot, and severe gastro-intestinal problems).
[34] *Id.* at ¶¶ 84-84(a).
[35] *Id.* at ¶ 74(b).
[36] *Id.*
[37] *Id.* at ¶ 88.
[38] *Id.* at ¶ 89 (profanity omitted).

regulations created an implied contract that Defendants generally breached.[39]  He alleges that Defendants have failed to follow a number of internal prison regulations.[40]

**J. Thomas's November 1, 2017 "Supplemental Complaint"**

On March 28, 2017 at approximately 9:45 PM, Defendant Burgos allegedly locked Thomas in a "change-out/holding cell."[41]  Thomas describes the cell as approximately four feet square and containing a metal chair but no toilet or sink.[42]  Thomas says he was kept in this holding cell for three to four hours.  Thomas does not claim any defendant denied a request to use a toilet.

While held in the holding cell, Thomas apparently urinated on the cell's floor.[43]  Thomas complains he received a rash on his ankles and calves from the urine.[44]

Thomas believes that Burgos put him in the holding cell for three or four hours because Burgos believes Thomas to be a "high filer."[45]  Thomas also alleges that when Burgos released Thomas from this cell, Burgos pretextually accused him of using a racial slur against one of the prison staff.[46]  Thomas states that he was cleared of this allegation in an administrative hearing.[47]

## II. Legal Standard

A complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which relief can be granted.  To survive a dismissal, a complaint "must present 'enough facts to state claim to relief that is plausible on its face'" when its factual

---

[39] *See id.* at ¶¶ 96-99(a).
[40] *See id.* at ¶ 100.
[41] Doc. 8 at ¶ 13.
[42] *Id.* at ¶ 15.
[43] *Id.* at ¶¶ 20-22.
[44] *Id.* at ¶ 21.
[45] *Id.* at ¶ 23.
[46] *Id.* at ¶¶ 25-26.
[47] *Id.*

allegations are presumed true and all reasonable inferences are drawn in favor of the non-moving party.[48]  Although pleadings and documents filed by *pro se* litigants are "liberally construed" and held to less stringent standards than formal pleadings drafted by lawyers,[49] *pro se* plaintiffs must still meet basic pleading requirements and courts are not required to conjure allegations on their behalf.[50]

### III. Analysis

The State Defendants seek to dismiss all of Thomas's claims.  The Court addresses each of their arguments in turn.

### A. Statute of Limitations and Failure to Exhaust

The State Defendants argue that Thomas's claims are untimely and that he has not exhausted his remedies within the prison administrative system.  Both of these arguments are affirmative defenses.  The State Defendants bear the burdens to prove these defenses.[51]  While the statute of limitations appears to have run on many of Thomas' claims, the limitation period tolls during administrative grievance procedures.

The State Defendants have provided no documents suggesting that Thomas has not exhausted his intra-prison remedies.  Without the relevant documentation, the Court is unable to determine whether Thomas has exhausted his intra-prison remedies.

Relatedly, Thomas correctly notes that the statute of limitations on his claims is tolled during the pendency of administrative grievance procedures.[52]  Because neither party has

---

[48] *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[49] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
[50] *See Erwin v. Edwards*, 22 F. App'x. 579, 580 (6th Cir. 2001).
[51] *See Surles v. Andison*, 678 F.3d 452, 456-58 (6th Cir. 2012) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).
[52] *Id.* at 458.

presented evidence regarding what administrative grievances were filed or regarding when any administrative grievances were filed or finished, the Court cannot calculate how long the statute of limitations may have been tolled or whether the statute of limitations has run on any of Thomas's claims.

The Court **DENIES** the State Defendants' motion to dismiss on these grounds.

**B. Thomas's State Law Claims and Claims Based on Failure to Follow Internal Regulations**

Thomas raises a number of state law claims in his complaint. He has not presented these claims, however, to the Ohio Court of Claims, as Ohio state law requires.[53]  Thomas's argument that this state law statutory scheme is unconstitutional fails as the Sixth Circuit has previously upheld the Court of Claims presentation requirement for state law claims in similar cases alleging wrongful actions by corrections employees.[54]

Thomas also raises a number of claims based on the State Defendants' alleged failure to follow internal prison regulations. To the extent these claims are based on implied contract, they are state law claims and the Court dismisses them because Thomas has failed to present those state law claims to the Ohio Court of Claims. If Thomas intends these claims to state constitutional law claims, these claims also fail. A mere failure to follow an internal regulation does not, by itself, rise to the level of a federal constitutional violation.

For this reason, the Court **GRANTS** the State Defendants' motion to dismiss Thomas's state law claims without prejudice for lack of jurisdiction. The Court also **GRANTS** the State

---

[53] *See Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989) (holding that a district court may not assert pendant jurisdiction over a claim against a state employee in her individual capacity until the Ohio Court of Claims issues a decision).
[54] *See id.*

Defendants' motion to dismiss Thomas's claims that the State Defendants failed to follow internal regulations.

## C. Access to Courts Claim

Thomas claims the State Defendants attempted to impede his access to the courts or to retaliate against him for his litigation activities. Thomas's complaint gives few specific descriptions of individual defendant's acts that impaired his access to court. Instead, Thomas gives only general and conclusory allegations.

In order to state an access to courts claim, Thomas must allege both that the actions of the State Defendants have impeded his law library access or similarly denied access to other needed resources and Thomas must also allege that this lack of access has negatively impacted a non-frivolous underlying claim.[55]

The State Defendants focus their access to court dismissal arguments on the merit of his underlying claims. Defendants argue that the State Defendants did not impact any non-frivolous claims.

First, the State Defendants are correct that Thomas's post-conviction petition challenging his child rape conviction cannot support his access to courts claim. Thomas's post-conviction civil case lost in 2009, before any of the allegations in Thomas's complaint occurred. Therefore the State Defendants' actions could not have impacted Thomas's post-conviction petition.

Similarly, the State Defendants' actions did not hinder Thomas's ability to pursue his claims in *Thomas v. Novicky*.[56] The Sixth Circuit dismissed that case because of Thomas's 2012 failure to timely pursue his administrative remedies.[57] As with his post-conviction petition,

---

[55] *See Looper v. Gibson*, 63 F. App'x 877, 877-78 (6th Cir. 2003) (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)).

[56] No. 4:13-cv-01469 (N.D. Ohio).

[57] *See Thomas v. Mahoning County Jail*, 2017 WL 3597428, at *3 (6th Cir. 2017).

Thomas's point-of-failure leading to *Novicky*'s dismissal occurred before any of the actions by the State Defendants in Thomas's complaint in this case.

Finally, Thomas's still-pending § 1983 claim in *Thomas v. Rogers*,[58] cannot be used to sustain his access to courts claim here. Excepting the deliberate indifference claim that remains undecided, none of the factual predicates in Thomas's complaint in the *Rogers* case stated a claim upon which a court could grant relief.[59] Thomas's failure in that case was caused by factual deficiencies, not insufficient legal research.

Even if Thomas could show some impact upon a non-frivolous claim, Thomas alleges little to support an actionable access to court denial. Thomas merely complains that the prison library was closed fifteen minutes early, complains that his typewriter was taken from him for some time, and complains that he was once wrongfully excluded from the law library because his shirt was untucked.[60] None of these actions would plausibly deny an inmate access to the courts.

Because he has not identified a non-frivolous lawsuit that was impacted by the State Defendants' actions, Thomas has failed to state an access to courts claim. The Court therefore **GRANTS** the State Defendants' motion to dismiss Thomas's access to courts claim.

**D. First Amendment Retaliation Claim**

In order to state a First Amendment retaliation claim, Thomas must adequately allege that:

> (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by [Thomas's] protected conduct.[61]

---

[58] No. 1:14-cv-2127 (N.D. Ohio).
[59] *See Thomas v. Hininger*, No. 15-3547 (6th Cir. Feb. 25, 2016).
[60] *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) (constitutional violation shown only when failure to provide legal assistance or library causes actual injury to prisoner's litigation).
[61] *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012).

Thomas has met these three requirements.

Thomas has filed lawsuits that are protected conduct.[62] But Thomas generally fails to show that the individual defendants took actions that would deter a person of ordinary firmness from continuing those lawsuits.

Thomas first alleges that not-identified John Doe Defendants took "2 large bags of coffee, 6 Christmas greeting cards . . . a box of candy ('nutty bars'), his only bag of shaving razors, an expensive Polo T-shirt, [and a] cable cord and TV splitter necessary to make his television operable, and an ace of spades card from his deck of playing cards."[63]

Thomas does not allege who took these items of property. But apart from this deficiency, even a wrongful taking of coffee and candy nutty bars would not deter a litigant of ordinary firmness.

Thomas next complains that the State Defendants generally verbally harassed him for pursuing claims. Mostly, Thomas does not identify specific defendants and instead generally complains about comments identifying him as a filer. For example, Thomas alleges: "When the inmates were still present, Defendant John Doe 4 referred to Thomas and a number of other inmates to Defendants John/Jane Doe 1-3 and other SRT personnel, as 'filers' and 'troublemakers.'"[64] Even if we overlook Thomas' failure to identify the responsible defendant, the general reference to Thomas as a filer is insufficient to deter a litigant of ordinary firmness.

Thomas makes one plausible retaliation claim. With Count Five, Thomas says he was removed from Range 5A/B and placed in Range 4A/B. Range 5A/B includes Christian faith-

---

[62] *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) ("We have previously recognized that '[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.'") (quoting *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000)).

[63] *See* Doc. 1 at ¶ 19.

[64] *Id.*

based programming while Range 4A/B operated as a limited movement range and housed

disciplined, gang-related and predator inmates.  Thomas alleges that, in part, Defendant Walker-

Williams placed him Range 4A/B in retaliation for his protected grievance and lawsuit actions.

Although the removal of coffee or candy is insufficient to allege retaliation, the Range

4A/B placement is sufficient to possibly dissuade Thomas from, and to retaliate for, exercising

his right to access the courts.[65]

Finally, Thomas also sufficiently states a connection between Walker-Williams's actions

in moving Thomas to Range 4A/B and his protected conduct.  He alleges that she, like other

State Defendants, referred to him as  "causing trouble" in reference to his litigation activities

when she took negative actions towards him.

The Court **DENIES** the State Defendants' motion to dismiss Thomas's First Amendment

retaliation claim as to the Housing Range 4A/B placement.  Moreover, whether Thomas

exhausted administrative grievance requirements and whether Thomas timely makes this First

Amendment retaliation claim will be decided later.  The Court **GRANTS** the State Defendants'

motion to dismiss Thomas's other First Amendment retaliation claims.

### D. Fourth, Fifth, and Fourteenth Amendment Claims

Thomas claims that the State Defendants' wrongful seizure of some minimal personal

belongings during searches of his cell violated his due process rights and his right to be free from

unreasonable government seizures.[66]  However, "an unauthorized intentional deprivation of

property by a state employee does not constitute a violation of the procedural requirements of the

---

[65] *See Scott v. Stone*, 254 F. App'x 469, 474-75 (6th Cir. 2007) (describing the requirements for civil conspiracy in a First Amendment retaliation context); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("[M]ore is alleged here-an entire campaign of harassment which though trivial in detail may have been substantial in gross. It is a question of fact whether the campaign reached the threshold of actionability under section 1983.").
[66] *See* Doc. 1 at ¶¶ 18-38.

Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."[67]

To state a claim, Thomas must allege that there is no state remedy that could adequately compensate him for his loss.[68] Because he has not done and could not do this, he fails to state a Fourth Amendment due process claim or a Fifth Amendment takings claim.

Thomas also alleges a Fourteenth Amendment equal protection claim. Because no suspect class is involved, the Ohio practice Thomas attacks need only rationally further a legitimate purpose to withstand Thomas' equal protection challenge.[69] To win on an equal protection claim, an inmate must prove: (1) that similarly situated inmates intentionally have been treated differently from one another by the government; and (2) that there is no rational relation between the dissimilar treatment and any legitimate penological interest.[70]

Thomas makes a general claim that he was treated badly because he pursued litigation and administrative remedies. But regarding the unidentified prison guard's purported property taking, Thomas does not allege any similarly situated non-litigator who was treated differently.

The Sixth Circuit has previously stated that "selective enforcement of the laws in retaliation for the exercise of a fundamental right," including the right to access the courts, can state an equal protection claim.[71] Nevertheless, Thomas never identifies any otherwise similarly situated comparator.

---

[67] See _Hudson v. Palmer_, 468 U.S. 517, 533 (1984).
[68] See _Macene v. MJW, Inc._, 951 F.2d 700, 706 (6th Cir. 1991).
[69] See _Doe v. Wigginton_, 21 F.3d 733, 740 (6th Cir. 1994) (Ohio prison authorities did not violate equal protection rights in failing to conduct HIV testing. "The Policy thus need only 'rationally further' a legitimate State purpose to withstand Doe's equal protection challenge.").
[70] See _LaFountain v. Harry_, 716 F.3d 944, 950-51 (6th Cir. 2013) (no equal protection claim stated when white inmate failed to allege that prison officials treated any similarly situated nonwhite inmates differently).
[71] _Carmen's East, Inc. v. Huggins_, No. 92-1590, 1993 WL 172879, at *1 (6th Cir. 1993) (unpublished).

Further, the Sixth Circuit's holding on the selective enforcement of laws can easily be distinguished from the selective enforcement of prison regulations that Thomas alleges here. Prison officials are regularly given broad discretion in enforcing intra-prison regulations.[72] Therefore Thomas has not sufficiently stated a plausible equal protection claim.

None of Thomas's allegations against the State Defendants state a Fourth, Fifth, or Fourteenth Amendment violation, and so the Court **GRANTS** the State Defendants' motion to dismiss Thomas's takings, due process, and equal protection claims.

## E. ADA Claim

Thomas fails to state an ADA claim. Even assuming that Thomas's prior gunshot wound or other ailments is a disability under the ADA, Thomas's allegation that Defendant Yockey refused to allow him to attend a prison program because of his alleged disability is not plausible. [73] Thomas's bare assertion that Yockey was aware of Thomas's disability does not raise a sufficiently plausible inference of disability discrimination. This is especially so given that even in Thomas's version of events, Yockey said that Thomas could not leave because Thomas's work was unfinished.[74]

For this reason, the Court **GRANTS** the State Defendants' motion to dismiss Thomas's ADA claim.

## F. RLUIPA and Free Exercise Claims

Thomas alleges that Defendant Walker-Williams violated his First Amendment right to free exercise of his religion and the Religious Land Use and Institutionalized Persons Act of

---

[72] *See Hayes v. Tennessee*, 424 F. App'x 546, 550 (6th Cir. 2011).
[73] *See, e.g.*, *Shoemaker v. E.I. DuPont de Nemours and Co.*, 405 F. App'x 16, 18-19 (6th Cir. 2010) (dismissing a disability discrimination claim when the plaintiff "offer[ed] no plausible theory of pretext").
[74] Doc. 1 ¶¶ 75-77.

2000 ("RLUIPA") when she transferred him from the faith-based prison unit Range 5A/B to Range "4A/B," which is a Limited Movement Unit prisoner ("LMU") ward.

Thomas has not stated a free exercise claim. Thomas does not identify a specific prison regulation that has burdened the exercise of his faith,[75] and he has failed to adequately allege religious discrimination.

Although Thomas points to several callous statements that Walker-Williams made when transferring him out of the faith-based Range, these statements do not suggest that Walker-Williams discriminated against him because of his religion. Specifically, when Thomas complained about his transfer, Walker-Williams told him: "[t]ell the Governor, maybe he'll care;"[76] "I don't care about any of your programs or religious programs. They don't mean anything to me;" and "you're going to [four] lower with the LMU's, see how much trouble you can cause there."[77] These statements lend support to Thomas' retaliation claim. But, they do not suggest religious discrimination.

That Walker-Williams took no adverse actions against any of the other Christians in the faith-based Range bolsters this conclusion.[78] Indeed, Thomas claims that the Christian faith-based Range 5A/B that Walker-Williams removed him from continues to operate and is "tailored to [the] Christian faith and needs; and no Jewish, Islamic or non-Christian church works are included in the program or 5A/B spiritual education library."[79]

---

[75] Cf. *Hayes,* 424 F. App'x at 549-50 (challenging a regulation banning plaintiff from receiving certain religious materials through the prison mail system even though another prisoner was allowed to receive those same materials).

[76] Doc. 1 at ¶ 52.

[77] *Id.* at ¶ 53(b).

[78] *See Hayes,* 424 F. App'x at 552 (holding that differential treatment of members of the same religion does not suggest discrimination on the basis of religion).

[79] Doc. 1 at 32-33 n.1.

Further, that Walker-Williams took no adverse actions against other Christian prisoners suggests that she "acted within [her] broad discretion" to apply the policies and procedures allowing the intra-prison transfer of inmates.[80]  For these reasons, Thomas has failed to state a First Amendment free exercise claim.

Thomas has also failed to state an RLUIPA claim.  The RLUIPA "expands the First Amendment protections accorded prisoners with respect to their religious beliefs."[81]  Section 3 of the RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.[82]

Congress enacted RLUIPA to address "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, but expected courts entertaining RLUIPA challenges to also "accord 'due deference to the experience and expertise of prison and jail administrators.'"[83]  "Religious accommodations must not override other significant interests in maintaining order and safety, and courts should give deference to prison officials 'in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'"[84]  Costs, limited resources, and prison security are all compelling state interests.

---

[80] *See Hayes*, 424 F. App'x at 553 ("Courts accord prison officials wide discretion in adopting and applying policies and procedures necessary to preserve safety, order, and discipline within corrections facilities.").
[81] *Id.* at 554.
[82] 42 U.S.C. § 2000cc-1(a)(1)-(2).
[83] *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 716–17 (2005)).
[84] *Id*. at 264-65.

-17-

To state an RLUIPA claim, Thomas need plead facts tending to show a substantial burden on his exercise of sincerely held religious beliefs.[85]  "To survive a motion to dismiss on their RLUIPA claim, plaintiffs must allege facts plausibly showing that the challenged policy and the practices it engenders impose a substantial burden on the exercise of their religious beliefs."[86] "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."[87]  While the government cannot put substantial pressure to modify religious beliefs, the Supreme Court does not "read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety."[88]  The Supreme Court's "decisions indicate that an accommodation must be measured so that it does not override other significant interests."[89]

Thomas fails to show that Ohio imposed any substantial pressure to modify his religious beliefs.  For his RLUIPA claim, Thomas complains that he had earlier been moved to a better housing area after Thomas agreed to abide "by certain 'faith-based' behaviors and participated in certain 'faith-based' activities."[90]

Inmate housing unit manager Defendant LeAnn Walker-Williams then moved Thomas from faith-based dormitory Range 5A/B or H5L to Range 4A/B.  Range 4A/B serves as a limited movement unit and houses what Thomas describes as predator inmate gang members and drug

---

[85] 42 U.S.C. § 2000cc–2(b).
[86] *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013).
[87] *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotation marks and alterations omitted); *see also* *Jehovah v. Clarke*, 798 F.3d 169, 179 (4th Cir. 2015).
[88] *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).
[89] *Id.*
[90] Doc. 1 at ¶ 12(c).

users. Thomas describes Range 4A/B as run gang-style with physical harassment of inmates by the incorrigible prisoners housed there.[91]

Thomas's attempts to identify a substantial burden generally fall into two categories: general Range 4A/B LMU conditions mix him with inmates who do not follow his Christian beliefs, and Range 4A/B ends his ready access to the religious literature kept in Range 5A/B.

In attempting to state an RLUIPA claim, Plaintiff Thomas alleges: "Thomas was exposed to the risks of this sinful vice of tobacco addiction and to first-hand and second-hand smoke caused by Walker-Williams' expulsion of him from Range 5A/B to 4A/B."[92] In summary, Thomas claims that Christianity teaches against smoking and claims that placement to Range 4A/B caused Thomas to be tempted to restart tobacco use.

Thomas separately alleges that Range 5A/B placement gave Thomas greater access to "34 different titled religious books, 6 different religious periodicals" and Christian labels not otherwise readily available in other housing.[93]

The Sixth Circuit has held that "[a]n action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of [his] religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs."[94]

Conduct that is claimed to be an "exercise of religion" must be based on "a religious belief rather than a philosophy or way of life" and the belief must be "sincerely held" by the

---

[91] *Id.* at ¶ 49.
[92] *Id.* at ¶ 50.
[93] *Id.* at ¶ 53.
[94] *Hayes*, 424 F. App'x at 555 (quoting *Barhite v. Caruso*, 377 F. App'x. 508, 511 (6th Cir. 2010)) (internal quotation marks omitted).

Plaintiffs.[95]  The "exercise of religion" includes "any exercise of religion, whether or not

compelled by, or central to, a system of religious belief."[96]

While Christianity teaches respect for adherent's health, Thomas fails to show a specific

religious belief that is impaired by Walker-Williams' placement of Thomas proximate to

smokers.[97]  Similarly, correctional facilities can place inmates without violating RLUIPA even

where the placement distances the inmate from religiously based reading material.[98]  Thomas has

failed to show how the conditions in Range 4A/B substantially burden the exercise of his

religious faith.

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Thomas's free

exercise claim and **GRANTS** Defendants' motion to dismiss Thomas's RLUIPA claim.

### G. Eighth Amendment Claims

The Eighth Amendment requires that the government provide prisoners with "the

minimal civilized measure of life's necessities."[99]  These necessities include "shelter, sanitation,

food, personal safety, medical care, and clothing."[100]  To violate the Eighth Amendment, prison

officials must act with "'deliberate indifference' to inmate health and safety."[101]

Thomas alleges several potential Eighth Amendment claims, one of which survives.  First,

Thomas alleges that when Defendant Ginley took some forms sent to him by the Court, this

violated the Eighth Amendment.  But, nothing about these facts suggests an Eighth Amendment

---

[95] *United States v. Meyers, 95 F.3d 1475, 1482 (10th Cir.1996).*
[96] 42 U.S.C. § 2000bb–2(4); 42 U.S.C. § 2000cc–5(7)(A).
[97] *See Colvin v. Caruso, 605 F.3d 282, 297-98 (6th Cir. 2010)* ("[U]nder RLUIPA, prison officials are to focus their inquiries on 'the sincerity of a prisoner's professed religiosity.'") (quoting *Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005))*.
[98] *See Hayes*, 424 F. App'x at 554.
[99] *Rhodes v. Chapman, 452 U.S. 337, 347 (1981).*
[100] *Cruz-Salazar v. Pugh*, No. 12-cv-0917, 2012 WL 3112406, at *7 (N.D. Ohio July 31, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).
[101] *Farmer*, 511 U.S. at 834.

violation, as opposed to, for example, a continuation of Thomas's alleged conspiracy to violate

Thomas's access to the courts described above.

Next, Thomas alleges that Defendant Yockey's presence intimidated him into not

attending meals. Yockey's use of foul language does not rise to the level of a constitutional

violation. The Court therefore **GRANTS** the State Defendants' motion to dismiss these claims

against Defendants Ginley and Yockey.

Thomas also alleges that the prison provides inadequately nutritious food in unsanitary

conditions. Specifically, he alleges that the prison served three daily meals that may not have

satisfied vitamin A, B1, B2, B12, C, D or calcium needs.[102] He also alleges that birds, their

feathers, and their feces are regularly found in the chow hall.[103] Despite receiving three meals a

day, Thomas claims he has suffered from malnutrition and an assortment of medical maladies as

a result of the inadequate food and unsanitary eating conditions that the State provides.[104]

Although prisoners have no right to gourmet, or even appetizing, food, prisoners have a

right to nutritionally adequate food and a right to food that is not an immediate danger to their

health. To state a claim for an Eighth Amendment violation based on unlawful prison

conditions, an inmate must establish the alleged deprivation is "sufficiently serious" and denies

"the minimal civilized measure of life's necessities."[105] This is the "objective" prong of the

Eighth Amendment test.

In cases involving allegations of inadequate prison food, the Eighth Amendment requires

that prisoners be provided nutritionally adequate food that is prepared under conditions which do

---

[102] Doc. 1 at ¶ 77(a).

[103] *Id.* at ¶ 69.

[104] *See id.* at ¶ 77(a) (listing diarrhea, deteriorating eyesight, bone deterioration, and receding gums among the problems Thomas has suffered because of the insufficiently nutritious prison diet and unsanitary eating conditions).

[105] *Farmer*, 511 U.S. at 834 (citation omitted).

not present an immediate danger to the health of the inmates who consume it.[106]  Under the "subjective" prong of the Eighth Amendment test, the inmate must show that the allegedly responsible prison official was "deliberately indifferent" to a substantial risk of serious harm to the inmate's health or safety.[107]

Here, Thomas alleges the prison provides meals that do not satisfy recommended vitamin levels.  According to Thomas, Aramark did not provide him sufficient vitamin A, Bl, B2, B12, C, D or calcium and because of these "vitamin and mineral deficiencies, Thomas has suffered malnutrition, severe gastrointestinal injuries causing him chronic pain, i.e., diarrhea, deteriorating eyesight, bone deterioration, chronic tiredness and lassitude, receding gums, gum and tooth damage, and severe mental and emotional trauma."[108]

Thomas's complaints of a vitamin deficiency do not make out deliberate indifference to a substantial risk of serious harm.

But Thomas also alleges that food service provider Aramark prepared food in unsanitary conditions "in a chow hall subject to avians and avian (bird) disease, waste, bird feathers falling from above and feces."[109]

These unsanitary food preparation and food service allegations are sufficient to state an Eighth Amendment claim.

Thomas next alleges that Defendant Burgos violated his Eighth Amendment rights by locking him into a small holding cell for three to four hours with no access to a sink or toilet, resulting in Thomas urinating on himself and standing in his urine for over an hour.[110]  Thomas

---

[106] *See Robles v. Coughlin*, 725 F.2d 12, 15 (2nd Cir. 1983).
[107] *Farmer*, 511 U.S. at 834-37.
[108] Doc. 1 at ¶ 77(a).  (School children must be taught the importance of using a multi-vitamin!)
[109] Doc. 1 at ¶ 69.
[110] *See generally* Doc. 8.

does not allege that he requested to use a toilet.  This three to four hour period is a *de minimis* inconvenience. [111]  "Regarding his toilet-related claims, the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets."[112]

The Court therefore **DENIES** the State Defendants' motion to dismiss Thomas's Eighth Amendment claims involving the argued contamination of the prison food with bird waste. The Court otherwise **GRANTS** the Defendants' motion to dismiss Thomas's Eighth Amendment claims.

### H. Thirteenth Amendment and FLSA Claims

Thomas alleges that he has been forced into involuntary servitude for Defendant Aramark in violation of the Thirteenth Amendment.  He also argues that the work that he has performed for Aramark is covered by the FLSA, entitling him to minimum wages.  Thomas claims that the Thirteenth Amendment prohibits the state from forcing him to work for a private company.[113] Second, he claims that he is an employee of Defendant Aramark, and not of the state of Ohio.[114] Thomas claims he is entitled to the FLSA's protections.[115]

Prison inmates who are required to work as part of their sentences within the correctional facility as part of state-run prison industries programs are not "employees" within the meaning of the FLSA's minimum wage provisions.[116]

---

[111] *See* Doc. 20 at 15.
[112] *Abdur-Reheem-X v. McGinnis*, 198 F.3d 244 (6th Cir. 1999) (unpublished); *Wiley v. Ky. Dep't of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *4 (E.D. Ky. 2012) ("Temporary placement in a cell with no flushable toilet is not an extreme deprivation of a basic necessity.").
[113] *See* Doc. 1 ¶ 74(a) & n.1.
[114] *See id.* at ¶ 74(bb).
[115] *See, e.g.*, *Sims v. Parke Davis & Co.*, 334 F. Supp. 774 (E.D. Mich. 1971), *aff'd*, 453 F.2d 1259 (6th Cir. 1971).
[116] *See* *McMaster v. State of Minn.*, 30 F.3d 976 (8th Cir. 1994); *Gambetta v. Prison Rehab. Indus. & Diversified Enterprises, Inc.*, 112 F.3d 1119, 1124 (11th Cir. 1997); *Harker v. State Use Industries*, 990 F.2d 131 (4th Cir. 1993); *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993).

Likewise, inmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if a prison system requires them to work.[117]  The Thirteenth Amendment excepts from its general prohibition on involuntary labor compelled labor as punishment for a crime.[118]  Compelling an inmate to work without pay does not violate the Constitution.[119]

The Court **GRANTS** the State Defendants' motion to dismiss those claims.

## I. Preliminary Injunction, Thomas's Other Claims, and Thomas's Outstanding Motions

In his opposition to the State Defendants' motion to dismiss, Thomas disavowed his request for preliminary injunctive relief.  Therefore, to the extent Thomas requested a preliminary injunction in his complaint, the Court **DENIES** that request.

The Court's analysis above addresses all of Thomas's substantive claims.  Thomas uses numerous other legal terms throughout his complaint that suggests he is attempting to assert other claims.  However, the factual allegations and arguments within his complaint, supplemental complaint, and opposition to the State Defendants' motion to dismiss are not sufficiently clear or specific enough to assert any plausible claims beyond those that the Court has discussed.

Finally, Thomas has also filed several outstanding motions not relating to the substance of this motion to dismiss.  The Court **DENIES** Thomas's motions to strike the various incarnations of the State Defendants' motions to dismiss.[120]  The Court also **DENIES** Thomas's motion for extension of time as moot.[121]

---

[117] *Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001).
[118] *Villarreal v. Morales*, 370 F. App'x 542, 543 (5th Cir. 2010).
[119] *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006).
[120] Doc. 9; Doc. 34.
[121] Doc. 35.

### IV. Conclusion

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the State Defendants' motion to dismiss. The Court **DISMISSES** all of Thomas's claims except his Eighth Amendment claims involving prison food; and his First Amendment retaliation claim as to Defendant Walker-Williams.

The Court **DENIES** Thomas's motions to strike. The Court also **DENIES** Thomas's motion for extension of time as **MOOT**.

IT IS SO ORDERED.

Dated: February 16, 2018                         s/         *James S. Gwin*_____
                                                                    JAMES S. GWIN
                                                                    UNITED STATES DISTRICT JUDGE